IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Willie J. Polite, | ) | C/A No. 3:15-1520-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CACI, Inc. - Federal, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Willie J. Polite, who initially appeared *pro se* and is currently represented by counsel, filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., against Defendant CACI, Inc. - Federal ("CACI"), his former employer. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on CACI's motion for summary judgment. (ECF No. 59.) Polite responded in opposition (ECF No. 75), and CACI replied (ECF No. 79). Having reviewed the parties' submissions and the applicable law, the court finds that CACI's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Polite, to the extent they find support in the record. Polite filed this employment action against his former

employer, CACI. Polite began working for CACI on September 22, 2012[1] when CACI was awarded the government contract to provide training at Camp McCrady, also referred to as Task Force Marshall, on Fort Jackson. Prior to working for CACI, beginning in 2008, Polite initially worked for Omega Training Group ("Omega") and then Cubic Worldwide Technical Services, Inc. ("Cubic"). Prior to CACI, Omega and subsequently Cubic held the government contract to provide training at Camp McCrady on Fort Jackson.

During Polite's employment with Cubic, his immediate supervisor was George Miller. Polite alleges that Miller harassed him and discriminated against him. Polite also alleges that when CACI obtained the government contract, Miller continued as his supervisor; however, Polite alleges that he was demoted from the position of lead instructor to technical instructor. Finally, Polite alleges that he was wrongfully terminated in May 2013.

The court previously construed Polite's Complaint as purporting to assert the following claims against the defendant:

- discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; and

---

[1] The court observes that the offer letter from CACI to Polite indicates a *projected* start date of September 20, 2012. (See ECF No. 59-11.) However, all other documentation in the record indicates that Polite actually began work for CACI on September 22, 2012. (See, e.g., Charge of Discrimination dated Jan. 2, 2014, ECF No. 59-17 at 2 (stating that Polite's employer since September 22, 2012 has been CACI); Letter dated Aug. 23, 2012 from Cubic to Polite, ECF No. 59-8 at 2 (stating that Polite's "employment with Cubic on the Task Force Marshall contract will end effective 21 September 2012)).

- discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*

(ECF No. 9 at 1.)[2]

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639,

---

[2] The court further construed Polite's Complaint as purporting to allege a state law claim of defamation. However, this claim was dismissed by Order dated December 30, 2015. (ECF No. 54.) The court also notes that although Polite filed an Amended Complaint after the court issued its order construing Polite's claims, his amendment did not change the claims he was asserting against the defendant.



645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Analysis**

    **1.    ADA Claims and Title VII Retaliation Claim**

Although the court construed Polite's Complaint as purporting to raise claims pursuant to the ADA, the defendant has presented evidence that Polite has unequivocally abandoned these claims, which Polite has failed to dispute. (See Pl.'s Dep. at 105, ECF No. 59-3 at 41.) Further, the court concludes that Polite has abandoned any claim of retaliation, as he failed to respond to CACI's arguments that it is entitled to summary judgment on his retaliation claim.

    **2.    Title VII Harassment**

CACI also argues that Polite's claim of harassment is barred because Polite failed to exhaust his administrative remedies with regard to this claim. Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII



claim deprives the federal courts of subject matter jurisdiction over the claim"). In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007).

The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of a reasonable investigation of that charge' ") (quoting Equal Employment Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith, 202 F.3d at 247 ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred).

The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation.
>
> First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently



> investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning.
>
> Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved. . . .

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (internal quotation marks and citations omitted). Therefore, a discrimination suit "is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." Stehle v. Gen. Mills Rest., Inc., 875 F. Supp. 320, 323 (D.S.C. 1994) (Title VII). When a discrimination claim "exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof," it is procedurally barred. Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (Title VII).

"At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs. While it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns." Sydnor v. Fairfax Cty., 681 F.3d 591, 594 (4th Cir. 2012). The United States Court of Appeals for the Fourth Circuit has discussed the parameters for when different unlawful employment practices are considered "reasonably related" to those raised in an administrative charge. For example, "where both the administrative complaint and formal litigation concern[] 'discriminat[ion] in promotions' but involve[] different aspects of the 'promotional system,'" the charges are reasonably related and

may be advanced in a subsequent civil suit.  Id. (quoting Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir.1981)).  Similarly, courts have permitted a claim raised in litigation that was not specifically described in the administrative charge to go forward "where both the EEOC charge and the [federal] complaint included claims of retaliation by the same actor, but involved different retaliatory conduct."  Id. (citing Smith, 202 F.3d at 248).  On the other hand, when the claim raised in the district court litigation involves a different *form* of unlawful employment practice than the one described in the administrative charge, courts have found the claim not to be administratively exhausted.  See, e.g., Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300-301 (4th Cir. 2009) (finding that claims of age, sex, and race discrimination were not exhausted where a charge alleged only retaliation); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (finding that claims of sex and color discrimination were not exhausted where a charge alleged only racial discrimination); Riley v. Tech. & Mgmt. Servs. Corp., Inc., 872 F. Supp. 1454, 1459-60 (D. Md. 1995) (finding that claims of sexual harassment and retaliation were not exhausted where a charge alleged only gender discrimination).

In response, Polite argues that his harassment claim was exhausted, arguing that he "clearly sets out allegations of harassment in his charge of July 2013."  (Pl.'s Resp. Opp'n Summ. J., ECF No. 75 at 5.)  Polite relies on his statements in the charge that Miller "caused problems for me due to my disability," "refused to accept accommodation request for reassignment," and "demoted me," and "[m]y employment was terminated May 15, 2013."  (Id.) (quoting ECF No. 75-1 at 6, 8).[3]  Upon

---

[3] Throughout Polite's memorandum, he identifies an exhibit by a letter designation, such as Exhibit A.  However, such designation is not included either on the exhibits or in the descriptions on the electronic docket.  It appears that Polite intended ECF No. 75-1 to be Exhibit A and ECF No. 75-2 to be Exhibit B, and so on.  Therefore, the court's citations in this Report and Recommendation are to the ECF numbers that the court believes Polite intended to reference.



review of these documents, the court notes that, generally, under Title VII, a civil action may be brought only against the respondent named in the administrative charge. See 42 U.S.C. § 2000e-5(f)(1). "Failure to name a party in the EEOC charge normally means the plaintiff did not exhaust the administrative remedies against [that party], and a district court must dismiss the case." Mayes v. Moore, 419 F. Supp. 2d 775, 782 (M.D.N.C. 2006) (citing Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458-59 (4th Cir. 1988)). These documents identify either Polite's prior employer—Cubic—or Task Force Marshall as the allegedly discriminating party. Further, both charging documents indicate that the earliest date the discrimination occurred was July 23, 2012 and the latest date was September 22, 2012. The undisputed evidence reveals that CACI did not become Polite's employer until September 22, 2012.

Additionally, upon review of these documents, the court agrees that Polite did not raise any allegation of harassment or hostile work environment in these charges, nor is such a claim reasonably related to the allegations in his EEOC charges of discrimination. Further, the court observes that the charges were completed on the EEOC Form 5 and do not indicate that the unlawful practice based on Polite's race and disability was a continuing action, but rather identify the dates of the events giving rise to the discrete claims of failure to accommodate and alleged demotion as occurring on specific dates. Courts have found that a charge asserting a discrete claim of discrimination is insufficient to provide notice of a claim of hostile work environment or harassment. See Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 752-53 (E.D. Va. 1991); see also Evans, 80 F.3d at 963, 964 (stating that an administrative charge of failure to promote based on the plaintiff's sex did not encompass allegations of sexual harassment); Logan v. Colonial Williamsburg Hotel Props., Inc., 941 F. Supp. 60, 62 (E.D. Va. 1996) (holding that an EEOC charge alleging race, sex, and retaliation discrimination was insufficient to give notice of a sexual harassment claim). Thus, Polite's



harassment claim is not reasonably related to the allegations in his EEOC charge of discriminatory failure to accommodate, demotion, and termination and is, therefore, beyond the scope of his charge and any reasonable investigation that would follow. Accordingly, such a claim is not properly exhausted and must be dismissed.[4]

### 3. Title VII Discrimination

Remaining to be addressed are Polite's claims that he was subjected to racial discrimination.[5] The only discrete acts of discrimination that Polite has identified that occurred during his employment with CACI appear to be his allegations that he was demoted on September 22, 2012 and that he was terminated on May 15, 2013. To the extent Polite is raising allegations of racial discrimination for actions that occurred prior to September 22, 2012, such claims would pre-date Polite's employment with the only named defendant in this case—CACI—and therefore, should be dismissed.

---

[4] Moreover, even if this claim were properly exhausted, the court finds for the reasons discussed in CACI's motion for summary judgment CACI is entitled to judgment as a matter of law on Polite's harassment claim. (See Def.'s Mem. Supp. Summ. J. at 21-25, ECF No. 59-2 at 21-25.) The court observes that Polite's response does not appear to address CACI's argument as to the merits of this claim against CACI.

[5] CACI notes that Polite's Complaint and Amended Complaint state that he "strongly feel[s]" the alleged unfair treatment and threatening disposition of Miller were "based on retaliation and disability because of [his] injuries incurred by [his] military service. [He] originally, submitted race as a violation as well, but it was determined it was a matter of perception and it would not be conducive to pursue that violation." (Am. Compl. at 3, ECF No. 21 at 3.) Polite later states that "[t]he aforementioned actions define discrimination based on disability and retaliation." (Id. at 5.) However, in light of Polite's testimony during his deposition that he is raising claims of race discrimination, the defendant has addressed these claims on the merits. (See Def.'s Mem. Supp. Summ. J. at 10 n.5, ECF No. 59-2 at 10.)



### a. Burden Shifting Framework in Employment Discrimination Claims

Title VII provides that it is unlawful for an employer to fail or refuse to hire any individual because of her race or color. 42 U.S.C. § 2000e-2(a). A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. When direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework for claims of race or age discrimination. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is one of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets its burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's

affidavit is untrue or that the defendant's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148 (emphasis added). However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

      **b.    Application**

Generally, to show a *prima facie* case, a plaintiff must establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)). CACI argues, and the court agrees, that Polite has failed to establish a *prima facie* case of racial discrimination.

With regard to the Polite's allegation that he was demoted on September 22, 2012, the undisputed record reveals in that prior to September 22, 2012, Polite was employed by Cubic as a lead instructor. By letter dated August 23, 2012, Cubic notified Polite that Cubic's team was unsuccessful in continuing the Fort Jackson Task Force Marshall task order; that "effective 22 September 2012, a team led by CACI Technical, Inc. will assume responsibility for this program;" and that "[a]s a result it is unfortunate, however necessary that your employment with Cubic on the Task Force Marshall contract will end effective 21 September 2012." (ECF No. 59-8 at 2.) The record further reveals that on August 23, 2012, Polite applied for the position of "technical instructor" with CACI (ECF No. 59-9 at 2) and by letter dated September 8, 2012, Polite was offered a position with CACI as a Technical Instructor reporting to George Miller. (ECF No. 59-11 at 2.) Thus, there is no support in the record for Polite's bare allegation that CACI "demoted" him. To the extent that Polite's claim could be construed as alleging that CACI discriminated in hiring him, such allegation is belied by the undisputed fact that Polite was offered and accepted the job as a technical instructor—the position for which he applied.

With regard to Polite's allegation that he was wrongfully terminated effective May 21, 2013, the undisputed evidence of record reveals the following facts. In April 2013 the federal government modified the Camp McCrady contract due to budget cuts and sequestration, requiring CACI to implement a reduction in force ("RIF") from forty-one employees to twenty-eight employees. (McCormick Decl. ¶ 23, ECF No. 59-4 at 4.) To determine whom to include in the RIF, CACI created a skills matrix with the following categories: education, clearance, technical ability, years of CACI experience, team work, and mission continuity. (Id. ¶ 24.) Based on the matrix, CACI found that Polite was one of the least qualified instructors. (Id. ¶ 25.) CACI decided "to retain the most qualified employees that would ensure its ability to fulfill terms of the contract," and based on



the matrix, CACI identified Polite as one of the instructors to be included in the RIF. (Id. ¶ 26.) By letter dated April 19, 2013 and acknowledged by Polite on April 21, 2013, CACI informed Polite that his employment "would be involuntarily terminated without cause effective close of business May 21, 2013 due to lack of work." (ECF No. 59-16 at 2.) Following the RIF, CACI employed twenty-eight employees on Camp McCrady, fourteen of whom were white and fourteen African-American. (McCormick Decl. ¶ 30, ECF No. 59-4 at 5.) Further, twelve of the twenty-eight retained employees were instructors, of which six were white and six were African-American. (Id. ¶ 31.) Thus, Polite cannot meet either the general *prima facie* case for racial discrimination or the more specific *prima facie* case for a RIF. See Corti v. Storage Tech. Corp., 304 F.3d 336, 340 n.6 (4th Cir. 2002) (stating to show a *prima facie* case in a RIF context, a plaintiff must establish: "1) []he was protected under Title VII, 2) []he was selected from a larger group of candidates, 3) []he was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained some unprotected persons who were performing at a level lower than that at which the plaintiff was performing").

In opposing CACI's motion for summary judgment, Polite appears to generally argue that he was subjected to racial discrimination because his supervisor, Miller, allegedly referred to Polite and his group (who appear to have all been African-American) as "boys" and had a condescending attitude. As an initial matter, Polite appears to rely, in part, on inadmissible letters and notes as evidence. The law does not permit a plaintiff to rely on hearsay to defeat a properly supported summary judgment motion. See Maryland Highways Contractors Ass'n v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."). Similarly, Polite's conclusory arguments that the "demotion" and termination were motivated by his race are insufficient, as a nonmoving party may

not rely on beliefs, conjecture, or speculation to defeat a properly supported motion for summary judgment. See Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Polite has presented no evidence to show that any decision maker at CACI was motivated by race as opposed to performance.

Thus, based on the record in this case, the court finds that Polite has forecast no admissible evidence from which a reasonable factfinder could infer intentional discrimination by CACI based on Polite's race. Moreover, even if Polite had produced sufficient evidence to establish a *prima facie* case of discrimination by CACI, he has presented no admissible evidence to show that the defendant's proffered reasons for hiring him as a technical instructor and for terminating his employment were pretext for race discrimination. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment (ECF No. 59) be granted.

*signature*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 3, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).